# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-01061-001-TUC-RM (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Marc Ryan Shipley, | |
| Defendant. | |

On March 3, 2017, Magistrate Judge Jacqueline M. Rateau—after conducting an evidentiary hearing on January 9 and 25, 2017—issued a Report and Recommendation (Doc. 142) recommending that this Court grant in part and deny in part Defendant's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47); deny Defendant's Motion to Suppress 618 North Camino Santiago (Doc. 48), and deny Defendant's Motions to Suppress Statements of 4/26/2016 and 4/27/2016 (Docs. 67, 101). Defendant filed Objections to the Report and Recommendation (Doc. 146).

**I.  Standard of Review**

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record

in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

## II. Discussion

### A. Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47)

On March 25, 2016, Defendant was involved in a motor vehicle accident and called the Tucson Police Department. (Doc. 142 at 2.) Officer Stacey Rosado was dispatched to the accident scene and observed Defendant outside his vehicle exchanging words with the other driver, who shortly thereafter departed the scene. (*Id.* at 3.) Defendant had a pistol on his person[1] and Officer Rosado observed what appeared to be a semiautomatic rifle between the driver's seat and center console of Defendant's vehicle. (*Id.*) Officer Rosado took the guns and placed them in the trunk of her patrol car. (*Id.*) The guns were returned to Defendant after officers ran their serial numbers. (*Id.* at 4.)

The two guns temporarily seized by Officer Rosado on March 25, 2016— a Glock .40 with the serial number XCV990 and a Sig Sauer 556 with the serial number TP003607—were identified in Support of Count 1 of the Indictment and listed as items sought pursuant to a search warrant executed on April 26, 2016 at 618 North Camino Santiago. (*Id.* at 8.) In his Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47), Defendant argues that the seizure of the weapons and the subsequent search of the weapons for serial numbers was unlawful, and that evidence obtained as a result of the search and seizure must

---

[1] Office Rosado testified that Defendant had a pistol on his right hip. (Tr. of Jan. 9, 2017 Hearing, Doc. 112 at 14.) Defendant testified that he was carrying a Glock .40 caliber handgun concealed in a holster under his shirt. (Tr. of Jan. 25, 2017 Hearing, Doc. 132 at 32-33.)

- 2 -

accordingly be suppressed.

Judge Rateau found that, under the circumstances, it was reasonable for Officer Rosado to briefly seize the weapons to ensure officer safety, but that concern for officer safety did not support Officer Rosado's examination of the weapons' serial numbers. (Doc. 142 at 11-14.) Accordingly, Judge Rateau found that any investigation beyond briefly seizing the weapons for safety reasons violated the Fourth Amendment. (*Id.* at 15.) Judge Rateau recommended that Defendant's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47) be granted as to the serial numbers found on the temporarily seized weapons and denied in all other respects. (Doc. 142 at 15.)

Defendant objects to Judge Rateau's finding that the weapons were seized for safety reasons, and he disputes Judge Rateau's holding that the seizure of the weapons was reasonable under the Fourth Amendment. (Doc. 146 at 1-4.) Defendant argues that the cases relied upon by Judge Rateau permit seizures only upon a reasonable suspicion of criminal activity or dangerousness, and that there is no evidence that Defendant's situation on March 25, 2016 involved dangerousness or criminal activity.

In *Terry v. Ohio*, the Supreme Court held that, "where a police officer observes unusual conduct which leads him reasonably to conclude . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. 1, 30 (1968). Any weapons seized as a result of such a search "may properly be introduced in evidence against the person from whom they were taken." *Id.* at 31. The Ninth Circuit has interpreted a *Terry* stop-and-frisk as constituting "two independent actions, each requiring separate justifications." *United States v. Flippin*, 924 F.2d 163, 165 n.2 (9th Cir. 1991). "The stop must be based on a suspicion of criminal activity and the frisk on a reasonable suspicion that the person is armed." *Id.* In situations involving a consensual encounter

accordingly be suppressed.

Judge Rateau found that, under the circumstances, it was reasonable for Officer Rosado to briefly seize the weapons to ensure officer safety, but that concern for officer safety did not support Officer Rosado's examination of the weapons' serial numbers. (Doc. 142 at 11-14.) Accordingly, Judge Rateau found that any investigation beyond briefly seizing the weapons for safety reasons violated the Fourth Amendment. (*Id.* at 15.) Judge Rateau recommended that Defendant's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47) be granted as to the serial numbers found on the temporarily seized weapons and denied in all other respects. (Doc. 142 at 15.)

Defendant objects to Judge Rateau's finding that the weapons were seized for safety reasons, and he disputes Judge Rateau's holding that the seizure of the weapons was reasonable under the Fourth Amendment. (Doc. 146 at 1-4.) Defendant argues that the cases relied upon by Judge Rateau permit seizures only upon a reasonable suspicion of criminal activity or dangerousness, and that there is no evidence that Defendant's situation on March 25, 2016 involved dangerousness or criminal activity.

In *Terry v. Ohio*, the Supreme Court held that, "where a police officer observes unusual conduct which leads him reasonably to conclude . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. 1, 30 (1968). Any weapons seized as a result of such a search "may properly be introduced in evidence against the person from whom they were taken." *Id.* at 31. The Ninth Circuit has interpreted a *Terry* stop-and-frisk as constituting "two independent actions, each requiring separate justifications." *United States v. Flippin*, 924 F.2d 163, 165 n.2 (9th Cir. 1991). "The stop must be based on a suspicion of criminal activity and the frisk on a reasonable suspicion that the person is armed." *Id.* In situations involving a consensual encounter

with law enforcement, only the frisk portion is at issue. *See id.* In such situations, "a police officer may pat down a suspect for weapons when he has reasonable suspicion that the suspect is armed." *Id.* at 165; *see also United States v. Orman*, 486 F.3d 1170, 1176-77 (9th Cir. 2007) (reasonable suspicion that a suspect is carrying a gun . . . "is all that is required for a protective search under *Terry*"). In *Orman*, the Ninth Circuit held that an officer lawfully seized a gun from a mall patron during a consensual encounter, even though the evidence indicated the patron's behavior was "perfectly-very cordial." *See* 486 F.3d at 1176-77.

Here, Defendant concedes that the initial stop of his vehicle on March 25, 2016 was lawful. (Doc. 47 at 3.) During the lawful stop, Officer Rosado observed weapons in plain view; thus, she had more than reasonable suspicion that Defendant was armed. Although the record does not indicate that Defendant was engaging in threatening behavior during the encounter, *Orman* supports the conclusion that it was reasonable for Officer Rosado to temporarily seize Defendant's firearms to ensure officer safety during the encounter. The Court agrees with Judge Rateau that Officer Rosado's temporary seizure of Defendant's firearms on March 25, 2016 did not violate the Fourth Amendment. *Id.* at 1176.[2]

Defendant also argues that Judge Rateau's Report and Recommendation omits the fact that Defendant was detained at the scene for approximately 15 minutes while officers checked the serial numbers of his weapons. (Doc. 146 at 1.) Defendant argues that his prolonged detention violated *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).[3] (Doc.

---

[2] In any case, Judge Rateau found credible Officer Rosado's testimony that she observed both of Defendant's firearms in plain view when she arrived to the scene of the accident. (*See* Doc. 142 at 3.) The exclusionary rule bars the introduction of evidence "discovered by means of" an unlawful search or seizure. *Terry*, 392 U.S. at 29. Because Officer Rosado observed the firearms in plain view during a lawful traffic stop prior to temporarily seizing them, it's not clear what evidence—other than the firearms' serial numbers, which Judge Rateau held must be suppressed—was discovered by means of the temporary seizure of the weapons.

[3] In *Rodriguez*, the Supreme Court held that a traffic stop violates the Fourth Amendment's proscription of unreasonable seizures if it lasts longer than "the time needed to handle the matter for which the stop was made." 135 S. Ct. at 1612.

- 4 -

146 at 2.) Contrary to Defendants' assertion, Judge Rateau's Report and Recommendation specifies that officers' interaction with Defendant on March 25, 2016 lasted approximately 15 minutes. (Doc. 142 at 4.) While it's true that Judge Rateau did not address the issue of whether officers violated *Rodriguez* by prolonging the traffic stop in order to check the serial numbers of Defendant's weapons, she did not address this issue because Defendant did not raise the issue in his Motion to Suppress. (*See* Doc. 47.) Furthermore, even if it was unlawful to detain Defendant for the time required to run the serial numbers of his firearms, Defendant has not explained what evidence was obtained as a result of the prolonged detention, other than the firearms' serial numbers, which Judge Rateau held must be suppressed. Accordingly, Defendant's argument regarding *Rodriguez* does not alter Judge Rateau's recommended resolution of Defendant's Motion to Suppress (Doc. 47).

### B. Motion to Suppress 618 North Camino Santiago (Doc. 48)

As noted above, the two guns temporarily seized by Officer Rosado on March 25, 2016 were identified as items sought pursuant to a search warrant that was executed on April 26, 2016 at 618 North Camino Santiago. (Doc. 142 at 8.) In his Motion to Suppress 618 North Camino Santiago, Defendant argues that, because the weapons were used to support the application for the search warrant executed on April 26, 2016, evidence gathered pursuant to the warrant must be suppressed. (Doc. 48 at 1-2, 4.) Defendant also argues that the search warrant lacked probable cause because the supporting affidavit contained stale information and several false statements. (*Id.* at 4.) Finally, Defendant argues that the warrant's description of evidence to be seized was impermissibly general. (*Id.* at 4-5.)

Based on her finding that Officer Rosado's temporary seizure of Defendant's guns on March 25, 2016 was lawful, Judge Rateau rejected Defendant's argument that the application for the search warrant included information obtained as a result of an unlawful seizure on March 25, 2016. (Doc. 142 at 17.)[4] Although Judge Rateau agreed

---

<sup>4</sup> As discussed above, Officer Rosado's temporary seizure of the firearms on

that the serial numbers of the weapons seized by Officer Rosado must be excised from the affidavit supporting the search warrant, she found that there was still probable cause to support the warrant even without that information. (*Id.* at 21-22.) Alternatively, Judge Rateau found that the good-faith exception to the exclusionary rule would apply. (*Id.* at 22.) Judge Rateau rejected Defendant's argument that the affidavit in support of the search warrant contained stale information, finding that "the events described in the affidavit establish a continuing pattern that supported the finding that the items seized pursuant to the warrant could be found at the Camino Santiago residence." (*Id.*) Judge Rateau rejected Defendant's arguments regarding false statements in the affidavit, in part based on testimony presented at the evidentiary hearing. (*Id.* at 17-20 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).) Finally, Judge Rateau found that the warrant was sufficiently specific to enable officers to understand what evidence they were authorized to seize. (*Id.* at 20-21.)

Defendant objects to Judge Rateau's reliance on testimony from the evidentiary hearing, arguing that it was inappropriate for Judge Rateau to inquire beyond the four corners of the warrant's supporting affidavit in order to cure staleness, omissions, and specificity problems. (Doc. 146 at 4.) Defendant further argues that Judge Rateau failed to discuss why the warrant listed weapons that had already been seized; that the warrant only authorized search and seizure of boxes, and there was no information to believe that boxes would be found at 618 North Camino Santiago; that the warrant was a general warrant; and that the good-faith exception does not cure the problems with the warrant. (*Id.* at 4-5.)

Judge Rateau did not cite any testimony from the evidentiary hearing in the portions of the Report and Recommendation evaluating Defendant's staleness and specificity arguments. (*See* Doc. 142 at 15-17, 20-21.) Accordingly, the Court rejects Defendant's argument that Judge Rateau inappropriately inquired beyond the four corners

---

March 25, 2016 was lawful. However, even if the temporary seizure had not been lawful, Officer Rosado observed the weapons in plain view during a lawful traffic stop.

of the warrant and supporting affidavit in order to cure staleness and specificity problems. Judge Rateau did consider testimony presented at the evidentiary hearing in evaluating Defendant's arguments that the search warrant contained false statements, and doing so was appropriate. *See Franks v. Delaware*, 438 U.S. 154, 155-56, 171-72 (1978). "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. At the hearing, the defendant bears the burden of establishing the allegations of perjury or reckless disregard by a preponderance of the evidence. *See id.* at 156. Judge Rateau properly considered the testimony presented at the evidentiary hearing in evaluating whether Defendant had established a *Franks* violation by a preponderance of the evidence. The Court agrees with Judge Rateau's conclusion that Defendant failed to establish a *Franks* violation.

Defendant's conclusory arguments regarding staleness, specificity, and Judge Rateau's alternative good-faith finding are without merit. With respect to Defendant's staleness argument, the Court agrees with Judge Rateau's conclusion that the affidavit submitted in support of the search warrant does not rely on stale information but instead includes information showing a continuing pattern of weapons possession by Defendant during the first four months of 2016. The warrant was supported by probable cause, even with the serial numbers of the weapons excised from the supporting affidavit.[5] With

---

[5] Defendant argues that, before the warrant was executed, the government had in its possession the two weapons listed in the supporting affidavit and specified in Attachment A to the warrant. (Doc. 146 at 4.) Special Agent Allison Gonzalez testified that, prior to execution of the warrant, officers observed Defendant's fiancé remove a firearm from the 618 North Camino Santiago residence and place it in the trunk of her car. (Tr. of Jan. 25, 2017 hearing, Doc. 132 at 94-100.) Defendant testified that he was told two weapons listed in the search warrant were seized from his fiancée prior to execution of the warrant. (*Id.* at 72-73.) The testimony on this issue is not entirely clear, and Defendant's testimony is based on hearsay. While it is problematic that the warrant may have listed weapons already in the government's possession, the Court finds that there was nevertheless probable cause to believe that other firearms could be found at the 618 North Camino Santiago residence.

respect to Defendant's argument that the warrant was an impermissible general warrant, the Court finds that the warrant's description of evidence to be searched for and seized was sufficiently specific. Defendant argues that the government seized Defendant's computer and cell phones pursuant to the warrant, and that this shows the warrant was a general warrant. However, seizure of the computer and cell phones was permissible under the warrant, because the computer and cell phones could have contained records or other "documentation . . . that would facilitate the procurement and/or possession of firearms." (Doc. 59-1 at 7); *see United States v. Gomez-Soto*, 723 F.2d 649, 654-55 (9th Cir. 1984) (search and seizure of briefcase and microcassette was permissible pursuant to a search warrant, because the items could have contained items of evidence specifically described in search warrant).

**C.  Motion to Suppress Statements of April 26 and 27, 2016 (Docs. 67, 101)**

After Defendant was arrested for being a felon in possession of firearms but before he was transported to FCI-Tucson, Agents Korn and Parkinson drove Defendant—at Defendant's request—to the 618 North Camino Santiago residence so that he could pick up some medication. (Doc. 142 at 6.) Agent Korn read Defendant his *Miranda* rights and confirmed that Defendant understood them. (*Id.*) Defendant asked to speak to an attorney, and Agent Korn responded that Defendant might have a chance to talk to his attorney later than day or the following day, but that he couldn't call his attorney at that time because the agents were trying to get Defendant to FCI-Tucson before it closed. (*Id.* at 6-7) Defendant then initiated further conversation by asking questions. (*Id.*) Defendant requested counsel two more times, and re-initiated conversation after being told he could not call his attorney at that time. (*Id.* at 25-26.)

On April 27, 2016, Agents Korn and Parkinson picked Defendant up at FCI-Tucson to transport him to his initial court appearance. (*Id.* at 7.) Both agents testified that Defendant was reminded of his *Miranda* rights but there is no audio recording confirming that testimony, and Defendant testified that he was not reminded of his rights. (*Id.*)

In his Motion to Suppress Statements of April 26, 2016 (Doc. 67), Defendant argues that officers violated his Fifth and Sixth Amendment rights by continuing to interrogate him after he invoked his right to counsel on April 26, 2016, and that any statements that Defendant made after invoking his right to counsel must be suppressed. In his Motion to Suppress Statements of April 27, 2016 (Doc. 101), Defendant argues that statements he made while officers drove him from FCI-Tucson to his initial court appearance on April 27, 2016 must be suppressed because officers did not advise him of his *Miranda* rights that day.

Judge Rateau found that Defendant unequivocally invoked his right to counsel on three separate occasions on April 26, 2016, but that he initiated new conversations after each invocation. (Doc. 142 at 26.) Judge Rateau also found that Defendant reinitiated conversations even though he had been advised of his *Miranda* rights and understood them. (*Id.*) With respect to Defendant's statements on April 27, 2016, Judge Rateau found credible Agent Korn's and Agent Parkinson's testimony that Defendant was reminded of his *Miranda* rights before he made the statements. (*Id.* at 26-27.) Judge Rateau further observed that, even if Defendant had not been reminded of his rights, the Supreme Court has rejected a per se rule mandating that a suspect be reminded of his *Miranda* rights. (*Id.* at 27 (citing *Wyrick v. Fields*, 459 U.S. 42, 48-49 (1982).)

Defendant objects to Judge Rateau's finding that Defendant's statements of April 26 and 27, 2016 are admissible. (Doc. 146 at 5-6.) Defendant argues that the statements were taken in violation of his *Miranda* rights, because conversation continued after Defendant made three separate requests for counsel on April 26, 2016, and that no *Miranda* warnings were given on April 27, 2016. (*Id.* at 5.)

Law enforcement officers must advise a suspect who is in custody of his right to counsel and his right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436 (1996). A suspect in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication,

exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

The record supports Judge Rateau's finding that Defendant was read his *Miranda* rights on April 26, 2017, that he understood them, and that he nevertheless initiated further conversation with Agents Korn and Parkinson after he invoked his right to counsel. With respect to the issue of whether Defendant was reminded of his rights on April 27, 2016, Judge Rateau—having observed the demeanor of witnesses at the evidentiary hearing—is in the best position to make credibility determinations. Defendant's Objections do not provide any basis for overturning Judge Rateau's finding that Agents Korn and Parkinson testified credibly that Defendant was reminded of his rights. Furthermore, Defendant has not cited any authority for the proposition that a Defendant who has been fully advised of his *Miranda* rights and has confirmed his understanding of those rights must later be reminded of those rights. *See Wyrick*, 459 U.S. at 48-49 (rejecting such a per se rule).

### D. Clear-Error Review

The Court has reviewed the unobjected-to portions of Judge Rateau's Report and Recommendation for clear error, and has found none.

**IT IS ORDERED:**

1. Judge Rateau's Report and Recommendation (Doc. 142) is **accepted and adopted in full**, and Defendant's Objections (Doc. 146) are **overruled**.
2. Defendant's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure Conducted 3/25/2016 (Doc. 47) is **granted in part and denied in part**, as specified in Judge Rateau's Report and Recommendation.
3. Defendant's Motion to Suppress 618 North Camino Santiago (Doc. 48) is **denied**.
4. Defendant's Motion to Suppress Statements of 4/26/2016 (Doc. 67) is **denied**.

5. Defendant's Motion to Suppress Statements of 4/27/2017 (Doc. 101) is **denied**.

Dated this 30th day of May, 2017.

Honorable Rosemary Márquez
United States District Judge